IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARK E. SCHMIDTER, individually,
and JULIAN P. HEICKLEN, individually,

        CASE NO.:6:12-CV-1102-ORL-36-KRS

        Plaintiffs,

vs.

        **DISPOSITIVE MOTION**

BELVIN PERRY, JR., as Chief Judge of
 the Ninth Judicial Circuit Court of Florida,

        Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF SUPPORTING LEGAL AUTHORITY

Defendant BELVIN PERRY, JR., as Chief Judge of the Ninth Judicial Circuit Court of Florida ("Judge Perry"), by and through his undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully moves this Court to enter summary judgment in his favor on Count I of the Complaint,[1] because there are no genuine issues of material fact and Judge Perry is entitled to judgment as a matter of law based on one or more legal defenses. In support of this Motion, Judge Perry states as follows:

## I. STATEMENT OF BASIS FOR SUMMARY JUDGMENT MOTION

On July 17, 2012, pursuant to 28 U.S.C. §2201(a), Plaintiffs filed this declaratory judgment action seeking, among other things, a judgment declaring unconstitutional an

---

[1] On March 14, 2013, United States Magistrate Judge Karla R. Spaulding issued a Report and Recommendation recommending this Court's dismissal of Count II of the Complaint. (Doc. #41). United States District Judge Roy B. Dalton, Jr. entered an Order adopting the Report and Recommendation and dismissing Count II as moot on April 2, 2013. (Doc. #46). Count I is the sole remaining claim.

administrative order which was issued by Judge Perry on January 31, 2011 while he was acting as Chief Judge of the Ninth Judicial Circuit in Orange County, Florida (i.e., Ninth Circuit Administrative Order #2011-03)(the "Expressive Conduct Order").[2] The Expressive Conduct Order precludes the distribution of materials *to summoned jurors on Orange County Courthouse complex grounds when those materials contain information tending to influence the summoned jurors on matters which may be brought before them as jurors.* Plaintiffs were found in contempt by Judge Perry for violating the Expressive Conduct Order.

Judge Perry hereby moves for summary judgment on the following legal grounds:

(1)     In connection with Plaintiffs' appeal of their contempt convictions, Florida's Fifth District Court of Appeal held the Expressive Conduct Order is constitutional. See Schmidter v. State, 103 So. 3d 263 (Fla. 5th DCA 2012). Accordingly, this Court should decline to exercise jurisdiction or should enter judgment in Judge Perry's favor based on the following: (a) the Full Faith and Credit Act and the common law principle of collateral estoppel; (b) the *Younger* abstention doctrine; and/or, (c) the *Rooker-Feldman* doctrine.

(2)     This Court should exercise its broad discretion to dismiss Plaintiffs' declaratory judgment claim because Plaintiffs have an adequate remedy at law (i.e., appellate review of their contempt convictions).

(3)     The doctrine of judicial immunity precludes Plaintiffs' claims.

(4)     To the extent Plaintiffs are seeking to recover any monetary relief (such as

---

[2] A copy of the Expressive Conduct Order is attached as Exhibit "A" to the Complaint.

restitution), Judge Perry is immune from such claims by virtue of the Eleventh Amendment.[3]

(5)   Even if this Court decides to consider and rule on Plaintiffs' constitutional challenge, the Expressive Conduct Order is constitutional as a matter of law.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

Defendant Belvin Perry is the Chief Judge of the Ninth Judicial Circuit Court in Orange County, Florida. (Complaint, ¶9). On or about January 31, 2011, Judge Perry issued the Expressive Conduct Order, which provides, in relevant part, as follows:

> The dissemination of all leaflets and other materials to summoned jurors containing written or pictorial information tending to influence summoned jurors, as well as approaching a summoned juror for the purpose of displaying a sign to, or engaging in oral protest, education, or counseling with information tending to influence summoned jurors on any matter, question, cause, or proceeding which may be pending, or which may by law be brought, before him or her as such juror, shall be prohibited on the Orange County Courthouse complex grounds.

> The term "courthouse complex" and any restrictions on expressive conduct contained herein shall apply to the Orange County Courthouse complex grounds, which includes the adjacent courthouse parking garage, the courthouse courtyard, and all other grounds surrounding the courthouse . . . . The public sidewalks that comprise the boundaries of this designated perimeter are excluded from this designation of the courthouse complex grounds.

---

[3] Certain of Judge Perry's immunity defenses may apply only if damages are sought by Plaintiffs, although the case law is not entirely clear. Plaintiffs allege they are seeking declaratory relief, "as well as any and all other *legal* and equitable relief deemed just and proper." Plaintiff Heicklen, *pro se*, has filed numerous documents suggesting he plans to seek damages to compensate for time he spent in jail, his bail bondsman fees, his expenses in jail, his appellate filing fees, his attorneys' fees, and damages representing his alleged aggravation. For these reasons, even if the immunity defenses only apply to damages claims, Judge Perry requests the Court to rule he is immune to such claims.

[4] Judge Perry has filed a Request for Judicial Notice requesting this Court to judicially notice the decision by the Fifth District Court of Appeal in Schmidter v. State, 103 So. 3d 263 (Fla. 5th DCA 2012).

(Complaint, ¶10 & Exhibit "A" thereto)(emphasis added). The purpose of the Expressive Conduct Order is described as follows:

> to ensure the safe and orderly use of court facilities, and to minimize activities which unreasonably disrupt, interrupt, and interfere with the fair and orderly conduct of jury trials, and the orderly and peaceable conduct of court business in a neutral forum free of actual or perceived partiality . . . whereas restriction upon expressive conduct and the dissemination of leaflets and other materials containing written information tending to influence summoned jurors as they enter the courthouse is necessary to serve the State's compelling interest in protecting the integrity of the jury system . . . .

(Complaint, ¶10 & Exhibit "A").

Plaintiffs are supporters of an organization known as the Fully Informed Jury Association ("FIJA"), which is "an organization engaged in educating the public about the jury system by distributing literature at courthouses across the country to potential jurors," and its "mission is to educate the public about their rights as jurors 'that the judge won't tell you.'" Schmidter, 103 So. 3d at 265. In this regard, Plaintiffs decided to distribute pamphlets to summoned jurors on the Orange County Courthouse complex grounds, which pamphlets contained statements including, but not limited to, the following:

- . . . judges only rarely 'fully inform' jurors of their rights, especially their right to judge the law itself and vote on the verdict according to conscience.

- Too often, jurors who try to vote their consciences are talked out of it by other jurors who don't know their rights, or who believe they 'have to' reach a unanimous verdict because the judge said that a hung jury would 'unduly burden the taxpayers.'

- It is precisely because people have individual, independent feelings, opinions, wisdom, experience and conscience that we depend upon jurors to refuse to mindlessly follow the dictates of a judge or of bad law.

-4-

- So, when it's your turn to serve, be aware: 1. You may, and should, vote your conscience; 2. You cannot be forced to obey a 'juror's oath;' 3. You have the right to 'hang' the jury with your vote if you cannot agree with other jurors!

- BE ACTIVE! Tell others what you know about jury veto power! Before a jury reaches a verdict, each member should consider: 1. Is this a good law? 2. If so, is the law being justly applied? 3. Was the Bill of Rights honored in the arrest? 4. Will the punishment fit the crime?

See Schmidter, 103 So. 3d at 265-66.

Although Plaintiffs were informed they could distribute their pamphlets outside the Orange County Courthouse complex grounds, including on the public sidewalks comprising the boundaries of the designated courthouse complex area, and were warned to cease violating the Expressive Conduct Order or risk contempt sanctions, including incarceration, Plaintiffs continued distributing the FIJA pamphlets to summoned jurors on the walkway leading from the courthouse garage to the main courthouse entrance and at other areas within the courthouse complex. Plaintiffs were thus arrested and found in contempt for violating the Expressive Conduct Order.[5] (Complaint, ¶¶12-13). See also Schmidter, 103 So. 3d at 269.

Plaintiffs appealed their contempt convictions to Florida's Fifth District Court of Appeal. On appeal, Plaintiffs presented substantive legal briefs and oral arguments asserting the Expressive Conduct Order violates their First Amendment right to free speech. See Schmidter, 103 So. 3d at 270. The Fifth District Court of Appeal considered the positions of both parties, but rejected Plaintiffs' constitutional challenge, holding the Expressive Conduct Order is "a reasonable, viewpoint neutral regulation in light of the purpose of the forum (the

---

[5] Plaintiff Schmidter was tried by bench trial on July 26, 2011, and Plaintiff Heicklen was tried by bench trial on September 1, 2011.

courthouse)." Id.[6]

In July 2012, after Plaintiffs had been found guilty of contempt by Judge Perry and while their appeal to the Fifth District Court of Appeal was pending, Plaintiffs filed the instant lawsuit, raising the same constitutional issues which were pending before the state appellate court. Despite the ruling of the Fifth District Court of Appeal and Plaintiffs' pending request for review by the Florida Supreme Court, Plaintiffs are still asking this Court to declare the Expressive Conduct Order unconstitutional, a determination which would be directly contrary to the Fifth District Court of Appeal's recent decision.

### III.  MEMORANDUM OF LEGAL AUTHORITY

**A.**     **The Related State Court Proceedings Preclude This Action.**

**(1)**     **The Full Faith and Credit Act and Doctrine of Collateral Estoppel**

The disposition of a federal action based upon related state court litigation is governed by preclusion law. Exxon Mobil Corp. v. Saudi Basic Ind. Corp., 544 U.S. 280, 293 (2005). The Full Faith and Credit Act, 28 U.S.C. §1738, requires federal courts to "give the same preclusive effect to a state court judgment as another court of that State could give." Id. See also Marrese v. American Academy of Ortho. Surgeons, 470 U.S. 373, 380 (1985); Waggoner v. R.J. Reynolds Tobacco Co., 835 F. Supp. 2d 1244, 1260 (M.D. Fla. 2011).

The Full Faith and Credit Act "embodies concerns of comity and federalism that allow the States to determine . . . the preclusive effect of judgments in their own courts." Marrese, 470 U.S. at 380. Thus, in order to determine the preclusive effect of a state court

---

[6] The Fifth District Court of Appeal did find a separate Public Speech Order issued by Judge Perry was unconstitutional. In response to such ruling, Judge Perry vacated that Order and this Court has, accordingly,

judgment, the federal court must refer to the preclusion law of the State in which the judgment was rendered. Community State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011); Lloyd v. Card, 283 Fed. Appx. 696, 701 (11th Cir. 2008).

Florida courts hold collateral estoppel "is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided." Dept. of Health & Rehab. Services v. B.J.M., 656 So. 2d 906, 910 (Fla. 1995). Florida courts describe the requirements for applying the doctrine of collateral estoppel as follows:

> Under Florida law, collateral estoppel, or issue preclusion, applies when the identical issue has been litigated between the same parties or their privies. In addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction.

Bradenton Group, Inc. v. State of Florida, 970 So. 2d 403, 408 (Fla. 5th DCA 2007). See also State v. McBride, 848 So. 2d 287, 290-91 (Fla. 2003); Atlantic Shores Resort, LLC v. 507 South Street Corp., 937 So. 2d 1239, 1243 (Fla. 3d DCA 2006); Husky Industries, Inc. v. Griffith, 422 So. 2d 996, 999 (Fla. 5th DCA 1982).

Florida courts hold collateral estoppel applies in criminal and civil contexts. State v. McBride, 848 So. 2d at 290, n.1. See also Lloyd, 283 Fed. Appx. at 701 (applying Florida rules of collateral estoppel and holding state prisoner's civil complaints against deputies regarding search warrant and planting of drugs were barred when prisoner had litigated validity of affidavit and search warrant and the execution of the warrant in prior state action - "defensive collateral estoppel in the criminal-to-civil context prevents a plaintiff in Florida from relitigating the same issue that was litigated in prior criminal proceedings").

dismissed as moot Count II of the Complaint, which dealt only with that Order. (Doc. #46).

Plaintiffs are seeking this Court's determination the Expressive Conduct Order is unconstitutional. Yet, this identical issue has already been fully litigated between Plaintiffs and the State of Florida, both during Plaintiffs' state court contempt proceedings arising from their violation of the Order and during Plaintiffs' appeal of their respective contempt convictions to the Fifth District Court of Appeal. After considering the legal briefs and oral arguments of both parties, the state appellate court rejected Plaintiffs' constitutional challenge to the Expressive Conduct Order. See Schmidter v. State, 103 So. 3d 263 (Fla. 5th DCA 2012). By virtue of the Full Faith and Credit Act and the doctrine of collateral estoppel, Plaintiffs are now precluded from relitigating the same constitutional issue in this Court.

### (2) *Younger* Abstention

*Younger* abstention "derives from the vital consideration of comity between the state and national governments." Huber v. GMAC Mortgage, LLC, 2011 WL 6020410 (M.D. Fla. Dec. 2, 2011)(citing 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003)). A federal court's duty to exercise its jurisdiction conferred by Congress "coexists with Congress's manifest 'desire to permit state courts to try state cases free from interference by federal courts.'" Dandar v. Church of Scientology Flag Service Organization, Inc., 2013 WL 593840 (M.D. Fla. Feb. 15, 2013). Specifically:

> Younger v. Harris, [401 U.S. 37 (1971)] . . and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. . . . Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims.' . . . The

> pertinent inquiry is whether the state proceedings afford an
> adequate opportunity to raise the constitutional claim. . .

Id. at *6.

A three part test determines whether *Younger* abstention is warranted: (1) whether there is an ongoing state proceeding that is judicial in nature; (2) whether the proceeding implicates important state interests; and (3) whether there is an adequate opportunity to raise constitutional challenges. Id. *Younger* abstention also applies to "declaratory judgments that would effectively enjoin state proceedings." Dandar, 2013 WL 593840 at *6 (quoting Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc., 124 F.3d 1258, 1261 (11th Cir. 1997)); Huber, 2011 WL 6020410 at *1 (citing 31 Foster Children, 329 F.3d at 1274).

*Younger* abstention is appropriate in this case. First of all, the state proceedings relating to the constitutionality of the Expressive Conduct Order remain ongoing. While the Fifth District Court of Appeal has issued an opinion holding the Order is constitutional and does not violate Plaintiffs' First Amendment rights, Plaintiffs have sought review of the Fifth District Court of Appeal's decision in the Florida Supreme Court (Case #SC13-155).

Second, an important state interest is at issue. Defendant is the Chief Judge of the Ninth Judicial Circuit Court in Orange County, not a private litigant. The Expressive Conduct Order specifically addresses the functioning and administration of the state judicial system and states its purpose is "to serve the State's compelling interest in protecting the integrity of the jury system." As recognized by the United States Supreme Court:

> There can be no question that a State has a legitimate interest in
> protecting its judicial system from the pressures which
> picketing near a courthouse might create. Since we are
> committed to a government of laws and not of men, it is of the

-9-

> utmost importance that the administration of justice be
> absolutely fair and orderly. This Court has recognized that the
> unhindered and untrammeled functioning of our courts is part
> of the very foundation of our constitutional democracy . . . [and
> that a] State may adopt safeguards necessary and appropriate to
> assure that the administration of justice at all stages is free from
> outside control and influence.

Cox v. Louisiana, 379 U.S. 559, 562 (1965). States are also interested in enforcing the orders

of their courts and in the contempt process, through which the state vindicates the operation

of its judicial system. Dandar, 2013 WL 593840 at *7 (citing Juidice v. Vail, 430 U.S. 327,

335 (1977)). "Federal court interference with the state's contempt process not only 'unduly

interfere(s) with the legitimate activities of the stat(e),' but also 'can readily be interpreted as

reflecting negatively upon the state courts' ability to enforce constitutional principles.'" Id.

Lastly, there must be an adequate opportunity in the state proceeding to raise

constitutional challenges. Judge Perry respectfully submits the existence and substance of the

Fifth District Court of Appeal's opinion reveals Plaintiffs had the opportunity to raise their

constitutional challenges to the Order; accordingly, *Younger* abstention is warranted.

(3) *Rooker-Feldman* **Doctrine**

Pursuant to the *Rooker-Feldman* doctrine,[7] "under limited circumstances, the

Supreme Court's 'appellate jurisdiction over state-court judgments . . . precludes a United

States district court from exercising subject matter jurisdiction in an action it would

---

[7] The *Rooker-Feldman* doctrine derives from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In Rooker, the Supreme Court held the district court lacked jurisdiction to determine whether a state court had rendered a decision which was contrary to the federal Constitution, holding the proper course was to appeal the state court's decision to the United States Supreme Court. 263 U.S. at 415-16. And, in Feldman, the Supreme Court held the district court and federal court of appeals lacked jurisdiction to review the appellant's claim the District of Columbia court misapplied its own rules on bar admissions. 460 U.S. at 486.

otherwise be empowered to adjudicate . . .'" Vasquez v. YII Shipping Company, Ltd., 692 F.3d 1192, 1195 (11th Cir. (Fla.) 2012)(quoting Exxon Mobil Corp., 544 U.S. at 291). To the extent a plaintiff seeks review of determinations made by the appellate or circuit courts of a state, a federal district court lacks jurisdiction to review those claims. Alvarez v. Atty Gen. of State of Florida, 679 F.3d 1257 (11th Cir. 2012); Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1330 (11th Cir. 2010); Hollins v. Wessel, 819 F.2d 1073 (11th Cir. 1987); Micklas v. Phillips, 2012 WL 3756981, *3 (S.D. Fla. Aug. 28, 2012).

The *Rooker-Feldman* doctrine "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000); Lefebvre v. Blackburn, 2008 WL 2949474, *6 (N.D. Fla. July 29, 2008). The doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that: (1) the success of the federal claim would 'effectively nullify' the state court judgment; or (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" Alvarez, 679 F.3d at 1262-63.

The Eleventh Circuit has set forth the following four criteria which must be satisfied for the *Rooker-Feldman* doctrine to bar federal court jurisdiction: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and, (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment. Lefebvre, 2008 WL 2949474 at *6 (citing Amos

v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265, n.11 (11th Cir. 2003)).

For example, in Paul v. Dade County, 419 F.2d 10 (5th Cir. (Fla.) 1969), the plaintiff brought a declaratory judgment action in federal district court seeking a declaration that a Latin cross erected at the county courthouse violated the First Amendment. The federal court determined the plaintiff had previously litigated the same constitutional questions in state court and took judicial notice of the Florida Third District Court of Appeal's decision there was no constitutional violation. Because the constitutional issue had already been raised and determined in the prior state court action, the federal court held it lacked jurisdiction to reconsider the issue. Id. at 13.[8] See also Manning v. Harper, 460 Fed. Appx. 872, 875 (11th Cir. 2012)(*Rooker-Feldman* doctrine barred district court from assuming jurisdiction over plaintiffs' §1983 claims against Florida state court judges who presided over underlying state court lawsuit and appeal, where ruling on those claims would necessarily require federal court to determine state courts wrongly decided issues before them and where plaintiffs could have taken full advantage of review in state courts prior to filing federal action); Sibley v. Lando, 2005 WL 6108991, *5, n.3 (S.D. Fla. April 8, 2005) (noting the *Rooker-Feldman* doctrine "prohibits a litigant involved in domestic relations proceeding in state court to sue the state judge or the state court in federal court for a declaratory judgment that orders entered in the proceeding were erroneous or unconstitutional").

Plaintiffs are improperly seeking what amounts to appellate review of their final contempt judgments, which were entered by Judge Perry after considering Plaintiffs'

---

[8]In E.B. Elliot Adv. Co., the Fifth Circuit noted the district court in Paul v. Dade County "could have just as easily held that the federal action was barred by res judicata." 425 F.2d at 1149, n.3.

constitutional challenges and before this lawsuit was filed. Plaintiffs are essentially inviting this Court to review and reject those contempt judgments. Plaintiffs had the opportunity to raise their constitutional challenges in state court and, in fact, did so both at their contempt hearing and on appeal to the Fifth District Court of Appeal. Accordingly, this Court lacks jurisdiction to reconsider the constitutionality of the Expressive Conduct Order by virtue of the *Rooker-Feldman* doctrine.

**B.      Declaratory Judgment Is Not Available Because Plaintiffs Have An Adequate Remedy At Law In State Courts:  The Appeal Of Their Contempt Convictions.**

The Declaratory Judgment Act, 28 U.S.C. §2201, "is an enabling act which confers a discretion on the courts rather than an absolute right on the litigant." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005); Sibley v. Wilson, 2004 WL 5589793, *4 (S.D. Fla. July 8, 2004). Under the Act, the district court has "broad discretion" as to whether to exercise jurisdiction over claims. Knights Armament Co. v. Optical Systems Technology, Inc., 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008). "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal remedies of any interested party, not that it *must* do so." Id.

"District courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." Ameritas Variable Life Ins. Co., 411 F.3d at 1332. See also Knights Armament Co., 568 F. Supp. 2d at 1375 (dismissing declaratory judgment claim since issues presented by claim would be decided in other cases pending between the parties); City Federal Savings Bank v. Dominion Federal Savings and Loan Ass'n, 657 F. Supp. 477 (S.D. Fla. 1987)(granting motion to dismiss declaratory

judgment action where same relief could be sought in pending state court action).

Several courts have held a claim against a judge under the Declaratory Judgment Act is unsustainable where the plaintiff possesses an adequate remedy at law - - appellate review of the judge's decisions. Blankenship v. Timothy, 2012 WL 3562449 (N.D. Fla. Aug. 8, 2012). See also Bolin v. Story, 225 F.3d 1234, 1243, n.7 (11th Cir. 2000)(because plaintiffs could simply appeal any rulings in their criminal cases, plaintiffs had an adequate remedy at law and were not entitled to declaratory relief in action against numerous judges and prosecutors); Kennedy v. Sakey, 2011 WL 5244680 (N.D. Fla. Sept. 30, 2011)(holding plaintiff was not entitled to declaratory or injunctive relief concerning defendant judge's actions where he had an adequate remedy at law); Cortes v. Jordan, 504 F. Supp. 2d 1318, 1321 (S.D. Fla. 2007)(dismissing plaintiff's claim for declaratory relief against judge who allegedly violated plaintiff's constitutional rights while presiding over the plaintiff's pending criminal case, because an adequate remedy at law existed for the alleged violations (i.e., the appeal of rulings in the criminal case)); 1-888-Traffic Schls v. Chief Cir. Judge, Fourth Judicial Circuit, 734 So. 2d 413, 414 (Fla. 1999)(proper method for challenging chief judge's jurisdiction to enter an administrative order was via writ of certiorari to the state appellate court); Fong v. Forman, 105 So. 3d 650 (Fla. 4th DCA 2013)(holding if plaintiffs wanted to challenge administrative order entered by the chief judge, "they were required to do so via a writ of certiorari to the district court of appeal").

Judge Perry respectfully requests this Court to exercise its broad discretion and to decline to exercise jurisdiction over Plaintiffs' declaratory judgment claim, because Plaintiffs have an adequate remedy at law. Plaintiffs appealed their contempt convictions and raised

their constitutional arguments on appeal. Plaintiffs' request for declaratory relief from this Court, if successful, would be inconsistent with and contrary to Judge Perry's ruling and the state appellate court's opinion and would, thus, severely undermine the state court proceedings.

**C.      Judge Perry Is Entitled To Absolute Judicial Immunity.**

Pursuant to the doctrine of judicial immunity, judges are absolutely immune "from damages for those acts taken while they are acting in their judicial capacity." Blankenship v. Miller, 2012 WL 3205475, *1 (11th Cir. (Fla.) Aug. 7, 2012); Bolin, 225 F.3d at 1239; Micklas, 2012 WL 3756981 at *3; Sloan v. McGrady, 2012 WL 266317, *3 (M.D. Fla. Jan. 30, 2012); Kennedy, 2011 WL 5244680 at *2; Ronet v. Foster, 2006 WL 1980273 (M.D. Fla. July 12, 2006); Fuller v. Truncale, 50 So. 3d 25, 27 (Fla. 1st DCA 2010); Johnson v. Harris, 645 So. 2d 96, 97 (Fla. 5th DCA 1994); Berry v. State, 400 So. 2d 80 (Fla. 4th DCA 1981). See, e.g., Manning v. Harper, 460 Fed. Appx. 872, 876 (11th Cir. 2012)(Florida state court judges who presided over plaintiff's underlying lawsuit and its appeal were entitled to absolute judicial immunity against §1983 claims for violation of due process rights); Sloan, 2012 WL 266317 at *3 (dismissing plaintiff's constitutional violation claims against state court judges based on their absolute judicial immunity to such claims). "Absolute judicial immunity applies 'even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.'" Sloan, 2012 WL 266317 at *3.

Judicial immunity "is absolute immunity not only from damages, but also from suit itself." Id. Judicial immunity "is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief." In re Lickman, 304 B.R. 897,

902 (Bankr. M.D. Fla. 2004). See also Simmons v. Edmonson, 225 Fed. Appx. 787, 788 (11th Cir. 2007)(holding defendant judge was absolutely immune from federal prisoner's injunctive and declaratory relief claims); Bush v. Washington Mutual Bank, F.A., 177 Fed. Appx. 16 (11th Cir. 2006)("the doctrine of judicial immunity applies to both suits for damages and suits seeking injunctive and declaratory relief");[9] Cuyler v. U.S. Dist. Ct., 2011 WL 5525935, *2, n.7 (M.D. Fla. Nov. 14, 2011)("To the extent that the plaintiff seeks injunctive or declaratory relief, absolute judicial immunity also bars those claims"); Cortes, 504 F. Supp. 2d at 1322 (holding affirmative defense of judicial immunity precluded plaintiff's claims against judge for declaratory and injunctive relief under §1983); Ronet, 2006 WL 1980273 at *2 (addressing plaintiff's civil rights complaint against *state circuit court judges* and holding "the doctrine of judicial immunity applies to both suits for damages *and suits seeking injunctive and declaratory relief* for acts taken by judges while acting in their judicial capacities"); Fuller, 50 So. 3d at 30 ("[S]imply because a complaint requests equitable relief does not remove the action from judicial immunity's reach. No Florida case limits the doctrine's application to cases involving monetary damages, nor does any Florida case hold the doctrine inapplicable to claims for equitable relief. What is clear from case law, as previously mentioned, is that judicial immunity means 'immunity from suit, not just assessment of damages.' Accordingly, if a judicial . . . officer's actions qualify for judicial immunity, no suit - - whether for monetary damages or equitable relief - can be brought");

_____

[9]In Bush v. Washington Mutual Bank, F.A., the Eleventh Circuit held judicial immunity does not approve judicial corruption because, although it precludes civil suits against judges, other safeguards exist to protect against judicial corruption. First, an aggrieved litigant may appeal the judgment. Second, a person can file a complaint about the judge with the relevant judicial authority. Third, a judge may be removed from office or criminally prosecuted (such as where the judge was taking bribes). Id. at 18.

Kalmanson v. Lockett, 848 So. 2d 374, 378 (Fla. 5th DCA 2003)("Judicial immunity, which is unquestionably one of the cornerstones of judicial independence, is an immunity from suit, not just from an assessment of damages"); Kay v. Erskine, 710 So. 2d 751 (Fla. 4th DCA 1998)(noting judicial immunity would apply to declaratory judgment count seeking determination judge's acts were outside his "judicial scope and authority").

There are two situations where judicial immunity may be overcome. First, there is no immunity if the judge engaged in actions outside the scope of his or her judicial capacity. Sloan, 2012 WL 266317 at *3; Kalmanson, 848 So. 2d at 378. The Eleventh Circuit considers the following factors in this regard: (1) whether the act complained of constituted a normal judicial function; (2) whether the events occurred in the judge's chambers or in open court; (3) whether the controversy involved a case pending before the judge; and (4) whether the confrontation arose immediately out of a visit to the judge in his judicial capacity. Sloan, 2012 WL 266317 at *3 (quoting Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005)). Second, judicial immunity does not apply where the judge's actions, although judicial in nature, are done in the *complete absence* of jurisdiction. Sloan, 2012 WL 266317 at *4; Kalmanson, 848 So. 2d at 378; Johnson, 645 So. 2d at 98; Rivello v. Cooper City, 322 So. 2d 602, 603 (Fla. 4th DCA 1975). Neither of these exceptions applies.

Judge Perry was unquestionably acting in his judicial capacity when he drafted and issued the Expressive Conduct Order and when he held Plaintiffs in contempt for violating that Order. The Florida Rules of Judicial Administration grant the chief judge the authority to "direct the formation and implementation of policies and priorities for the operation of all courts . . . within the circuit" and to "enter and sign administrative orders." Fla. R. Jud.

-17-

Admin. 2.215(b)(2). Judge Perry was acting within his judicial capacity to protect court security and operations and to ensure juror integrity when he issued the Expressive Conduct Order. Moreover, Plaintiffs were arrested and tried on contempt charges in open court, where they had the opportunity to testify and to call witnesses. Plaintiffs' dealings with Judge Perry were always in connection with his actions as a judge in situations where he had the authority and jurisdiction to act. Accordingly, the doctrine of judicial immunity bars Plaintiffs' claim.[10]

**D.    To the Extent Plaintiffs Are Seeking Monetary Relief, Judge Perry Is Entitled To Eleventh Amendment Immunity.**

Pursuant to the Eleventh Amendment to the Constitution: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subject of any Foreign State." U.S. Constit. Amend. XI. A lawsuit against a State in federal court by a citizen of that same State is likewise barred. Florida Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health and Rehab. Services, 225 F.3d 1208, 1219 (11th Cir. 2000); Svet v. Fla. Dept. of Juvenile Justice, 2012 WL 5188036, *3 (M.D. Fla. Oct. 19, 2012); Micklas, 2012 WL 3756981 at *3; Camm v. Scott, 834 F. Supp. 2d 1342 (M.D. Fla. 2011); Connor v. Halifax Hospital Medical Center, 135 F. Supp. 2d 1198, 1213 (M.D. Fla. 2001).

"Eleventh Amendment immunity from suit in federal court applies not only to a State itself, but to an 'arm of the State,' . . . and suits against a state officer in his or her official capacity." Svet, 2012 WL 5188036 at *3. In this respect, "the Eleventh Amendment prohibits

---

[10] See n. 3, supra. Some of the case law cited herein suggests claims for declaratory relief against state court judges are not barred by judicial immunity, while such claims against federal judges are barred by judicial immunity. Other cases suggest the contrary. At the very least, Judge Perry is entitled to immunity with respect to any claims for which Plaintiffs are seeking monetary relief.

actions against state courts." Micklas, 2012 WL 3756981 at *3. See also Caffey v. Alabama Supreme Court, 469 Fed. Appx. 748, 751 (11th Cir. 2012)(as state officials, Alabama Supreme Court and its justices and Alabama Circuit Judge, who found plaintiff in contempt of court, were immune from suit in their official capacity under the Eleventh Amendment); McBrearty v. Koji, 348 Fed. Appx. 437, 440 (11th Cir. 2009)(applying Eleventh Amendment immunity to a Florida District Court of Appeal); Simmons v. Conger, 86 F.3d 1080 (11th Cir. 1996)(under Eleventh Amendment, state circuit court judge could not be held liable in his official capacity in §1983 suit based on actions judge took from the bench).

Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), Eleventh Amendment immunity does not extend to suits against state officers seeking *prospective equitable relief* to end continuing violations of federal law. Florida Assoc. of Rehab. Facilities, Inc., 225 F.3d at 1219; Connor, 135 F. Supp. 2d at 1214. However, the Eleventh Amendment does bar suits seeking retrospective relief such as restitution or damages. Id. "The Eleventh Amendment's immunity is triggered when a declaration or injunction effectively calls for the payment of state funds as a form of compensation for past breaches of legal duties by state officials." Florida Ass'n of Rehab. Facilities, Inc., 225 F.3d at 1221.

Based on the foregoing, Eleventh Amendment immunity precludes Plaintiffs' claims against Judge Perry to the extent any monetary relief, such as restitution or compensatory damages, are sought to be recovered by Plaintiffs.[11]

---

[11] Although it appears Judge Perry is being sued in his official capacity, if the Court determines Judge Perry is also being sued in his individual or personal capacity, then Judge Perry respectfully requests the

**E.**     <u>The Expressive Conduct Order is Constitutional.</u>

Irrespective of whether the Full Faith and Credit Act, collateral estoppel, *Younger* abstention, the *Rooker-Feldman* doctrine, judicial immunity, or Eleventh Amendment immunity preclude this Court's review of the constitutionality of the Expressive Conduct Order, and even if this Court decides to exercise its discretion to consider Plaintiffs' declaratory judgment claim, Judge Perry respectfully submits the Order is constitutional.

Not every limitation on freedom of expression insults the First Amendment. <u>See</u> <u>Adderly v. Fla.</u>, 385 U.S. 39, 48, n. 7 (1966)("The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. . . A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations").

The adequacy of the government's justification for a restriction on speech is measured on a sliding scale. As a general rule, the nature of the forum (<u>i.e.</u>, public (traditionally or by designation) or nonpublic) will determine the appropriate test for evaluating the relevant restrictions on speech. <u>See</u> <u>Frisby v. Schultz</u>, 487 U.S. 474, 479 (1988); <u>Cornelius v. NAACP Legal Defense &Educ. Fund</u>, 473 U.S. 788 (1985); <u>United States v. Grace</u>, 461 U.S. 171 (1983); <u>Huminski v. Corsones</u>, 396 F.3d 53, 89 (2d Cir. 2005); <u>Berner v. Delahanty</u>, 129 F.3d

---

opportunity to present legal authority supporting an additional "qualified immunity" defense to any claim for monetary relief.

20, 25, n.4 (1st Cir. 1997).

Traditional public forums, which are historically associated with the free exercise of expressive activities, include streets, sidewalks, and parks. Grace, 461 U.S. at 177. See also Hill v. Colorado, 530 U.S. 703, 715 (2000); Frisby, 487 U.S. at 480; Perry Educ. Ass'n. v. Perry Local Educators Ass'n, 460 U.S. 37, 45 (1983); Internat'l Caucus of Labor Committees v. City of Montgomery, 111 F.3d 1548, 1550 (11th Cir. 1997). A second category of "public forum" for purposes of First Amendment analysis consists of public property which the state has designated for expressive activity by the public (e.g., university meeting facilities, school board meetings, municipal theaters). Perry Educ. Ass'n, 460 U.S. at 45.

With respect to these two types of "public forums," the state may enforce a "content-based" restriction on speech only if the restriction is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. The state may also enforce reasonable time, place, and manner restrictions on speech where the restrictions are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. See Frisby, 487 U.S. at 481; Grace, 461 U.S. at 177; Perry Education Assn., 460 U.S. at 45-46; Internat'l Caucus of Labor Committees, 111 F.3d at 1550; Daniel v. City of Tampa, 38 F. 3d 546, 549 (11th Cir. 1994).

Not all publicly owned property becomes a "public forum" simply because the public is permitted to come and go at the site, however. Grace, 461 U.S. at 177. Instead, some public property, including the Orange County Courthouse complex grounds, qualifies as a "nonpublic forum" for First Amendment purposes. "This is because courthouses and courthouse grounds (with the exclusion of perimeter public sidewalks) have uniformly been

treated as nonpublic forums for purposes of First Amendment activities." Schmidter, 103 So.

3d at 270. See also Huminski, 396 F.3d at 90; Sammartano v. First Judicial District Court in

and for Cty. of Carson City, 303 F.3d 959, 966 (9th Cir. 2002); Berner, 129 F.3d at 26; U.S.

v. Vosburgh, 59 F.3d 177 (9th Cir. 1995); Dinan v. Multnomah Cty., 2013 WL 324059, *13

(D.Or. Jan. 28, 2013); Heicklen v. Dept. of Homeland Security, 2011 WL 3841543, *12

(S.D.N.Y. Aug. 30, 2011);[12] Haas v. Monier, 2009 WL 1277740, *8 (D.N.H. April 24, 2009);

Mead v. Gordon, 583 F. Supp. 2d 1231, 1239 (D. Or. 2008); Washpon v. Parr, 561 F. Supp.

2d 394 (S.D.N.Y. 2008); Comfort v. MacLaughlin, 473 F. Supp. 2d 1026, 1028 (C.D. Cal.

2006)(all holding courthouses and/or courthouse grounds are non-public forum).

Nonpublic forums are governed by a different and less stringent First Amendment

standard than public forums. Perry Education Assn., 460 U.S. at 46. "Although the

government is not free from restraints in regulating speech in nonpublic forums, it is in these

areas that it enjoys its widest latitude in restricting speech." M.N.C. of Hinesville v. Dept. of

Defense, 791 F.2d 1466, 1473-74 (11th Cir. 1986). In a non-public forum, the government

can regulate speech as long as the regulation is: (1) reasonable in light of the purpose served

by the forum; and (2) viewpoint neutral. Daniel, 38 F. 3d at 549. See also Davenport v.

Washington Education Ass'n, 551 U.S. 177 (2007); Cornelius, 473 U.S. at 806; Perry Educ.

Ass'n, 460 U.S. at 46; Sammartano, 303 F.3d at 966; Vosburgh, 59 F.3d at *2; Dinan, 2013

WL 324059 at *13; Heicklen, 2011 WL 3841543 at *12; Mead, 583 F. Supp. 2d at 1239;

---

[12] The plaintiff in Heicklen v. U.S. Dept. of Homeland Security, 2011 WL 3841543 (S.D.N.Y. 2011) is
the same Julian Heicklen who is a Plaintiff in the instant case.

Washpon, 561 F. Supp. 2d at 408-409.[13]

Reasonableness is assessed "in light of the purpose of the forum and all the surrounding circumstances." Cornelius, 473 U.S. at 800; Washpon, 561 F. Supp. 2d at 409. Moreover, "the government is not required to choose the least restrictive alternative, it need only choose one that reasonably fulfills a legitimate and demonstrated need." Schmidter, 103 So. 3d at 270. See also DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254, 1267 (11th Cir. (Fla.) 2007)("the government does not need to show the regulation utilizes the least restrictive means of achieving the government interest").

Courts in several cases have found administrative orders prohibiting the distribution of materials to jurors to be reasonable in light of the purpose of a courthouse. For example, in another case involving Plaintiff Julian Heicklen, a federal district court stated:

> A courthouse serves . . . to provide a locus in which civil and criminal disputes can be adjudicated. Within this staid environment, the presiding judge is charged with the responsibility of maintaining proper order and decorum. In carrying out this responsibility, the judge must ensure that the courthouse is a place in which rational reflection and disinterested judgment will not be disrupted.

Heicklen, 2011 WL 3841543 at *13 (quoting Huminski, 396 F.3d at 91). In light of this purpose, the court noted expressive activities inside and outside a courthouse can interfere with a court's attendance to its business:

> This is particularly so here because Heicklen's purpose in distributing literature to prospective jurors was to encourage those who ended up being seated on a jury to 'judge the law as well as the facts.' This is precisely the sort of expressive

---

[13] Judge Perry submits even if the Orange County Courthouse complex grounds are a "public forum," which he denies, the Expressive Conduct Order satisfies the more stringent First Amendment standard.

activity that has the ability to disrupt 'reflection and disinterested judgment,' . . . the dedicated purpose of the Courthouse and the property on which it sits.

Id. See also FIJA v. County of San Diego, 78 F.3d 593 (9th Cir. 1996)(holding court order precluding distribution of materials to trial jurors was a "proper exercise[] of a court's inherent authority to take supervisory and administrative actions necessary to implement its judicial functions" and served the "state's compelling interest in protecting the integrity of the jury system"). See additionally, Braun v. Baldwin, 346 F.3d 761, 763 (7th Cir. 2003)("Although advocacy of jury nullification could no more be flatly forbidden than advocacy of Marxism, nudism, or Satanism, we cannot think of a more reasonable regulation of the time, place, and manner of speech than to forbid its advocacy in a courthouse").

Moreover, according to the Fifth District Court of Appeal in Schmidter,

It seems obvious that allowing groups or individuals to disseminate materials to summoned jurors, at the courthouse, in an attempt to influence jurors' decisions in cases they are called upon to decide would interfere with the proper administration of the justice system. The order does not seek to bar any groups or individuals from getting their message out in other places or using other methods; it only restricts the delivery of messages aimed at influencing jurors' decisions on courthouse grounds. The court's responsibility is to provide for the orderly administration of justice and to ensure that all litigants have their 'day in court' - - a day which is free from influences outside of the courtroom - - and the order is clearly reasonable in light of that aim.

Schmidter, 103 So. 3d at 271 (emphasis added).

The Expressive Conduct Order is reasonable in light of and wholly consistent with the court's legitimate interest in preserving juror integrity and ensuring all litigants have their day in court free from outside influences. Moreover, Plaintiffs and others have ample alternative

-24-

communication channels to get their message out to potential jurors. The sidewalks surrounding the courthouse perimeter are specifically excepted from the Order's scope. Individuals are not precluded from distributing information or expressing their viewpoints to jurors from the public sidewalks which are adjacent to and completely surrounding the Orange County Courthouse complex grounds.

The second requirement for the regulation of speech in a nonpublic forum is the requirement the regulation be viewpoint neutral. The Expressive Conduct Order clearly satisfies this requirement. It generally prohibits the dissemination of any materials which tend to influence summoned jurors on an issue before them. The Order does not draw any distinctions based on the content of the speech or the identity of the speaker. The Order does not single out certain types of information, such as materials addressing jury nullification or the presumption of innocence. It does not prohibit any particular speech content, such as "anti-abortion" speech, anti-death penalty speech, or "religious" speech. No particular viewpoint is prohibited. Instead, the Order covers *any* materials tending to influence jurors.

Because the Orange County Courthouse complex grounds are a nonpublic forum and the Order's restrictions on speech are reasonable in light of the purpose of that forum and are viewpoint neutral, the Expressive Conduct Order does not violate Plaintiffs' constitutional rights under the First Amendment.

## IV. CONCLUSION

Based on the foregoing, Defendant BELVIN PERRY, JR., as Chief Judge of the Ninth Judicial Circuit Court of Florida, hereby respectfully moves this Court to enter summary judgment in his favor.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2013, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to: ADAM H. SUDBURY, ESQUIRE, Sudbury Law PL, 424 E. Central Blvd., #307, Orlando, Florida 32801 at adam@sudburylaw.net and inbox@sudburylaw.net and Julian Heicklen, 36 Rachel Immenu #2, Jerusalem, Israel 93228 at jph13@psu.edu.

> s/John Edwin Fisher
> JOHN EDWIN FISHER, ESQUIRE
> Florida Bar No. 091677
> E-mail: jfisher@fisherlawfirm.com
> JAMIE BILLOTTE MOSES, ESQUIRE
> Florida Bar No. 009237
> E-mail: jmoses@fisherlawfirm.com
> Fisher, Rushmer, Werrenrath,
> Dickson, Talley & Dunlap, P.A.
> 390 North Orange Avenue, Suite 2200
> P.O. Box 712
> Orlando, Florida 32802-0712
> Telephone:     (407) 843-2111
> Facsimile:     (407) 422-1080
> Attorneys for Defendant